**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-CIV-63141-RAR**

**CHANEL, INC.,**

       Plaintiff,

vs.

**THE INDIVIDUAL, PARTNERSHIP OR UNINCORPORATED ASSOCIATION d/b/a ACCENTALUXURY.COM,** *et al.***,**

       Defendant.

_____/

**ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT**

**THIS CAUSE** came before the Court on Plaintiff's Motion for Entry of Final Default Judgment [ECF No. 29] ("Motion"). Plaintiff seeks entry of a default final judgment against Defendant, the Individual, Partnership, and Unincorporated Association identified on Schedule "A" that operates Internet websites and social media accounts that infringe Plaintiff's trademarks, and promote and sell counterfeit goods bearing Plaintiff's trademarks. *See generally* Mot. Plaintiff requests the Court: (1) enjoin Defendant from producing or selling goods that infringe on its trademarks; (2) disable, or at Plaintiff's election, transfer the domain names at issue to Plaintiff; (3) assign all rights, title, and interest, to the domain names to Plaintiff and permanently delist or deindex the domain names from any Internet search engines; (4) permanently disable the social media pages operating via the social media accounts; (5) suspend the e-mail addresses used by Defendant; and (6) award statutory damages. *See generally id.*

A Clerk's Default [ECF No. 22] was entered against Defendant on July 30, 2020, after Defendant failed to respond to the First Amended Complaint [ECF No. 12] despite having been served. *See* Proof of Service [ECF No. 20]. The Court having considered the record and noting no opposition to Plaintiff's Motion, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Entry of Final Default Judgment [ECF No. 29] is **GRANTED** for the reasons stated herein. Pursuant to Rule 58 of the Federal Rules of Civil Procedure, a default final judgment will be entered by separate order.

## BACKGROUND[1]

### A. Factual Background

Plaintiff is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office ("Chanel Marks"):

| Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| CHANEL | 0,626,035 | May 1, 1956 | IC 018 - Women's Handbags |
| ⊃C | 1,314,511 | January 15, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| CHANEL | 1,347,677 | July 9, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| CHANEL | 1,733,051 | November 17, 1992 | IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, Luggage, Business and Credit Card Cases, Change Purses, Tote Bags, Cosmetic Bags Sold Empty, and Garment Bags for Travel |
| ⊃C | 1,734,822 | November 24, 1992 | IC 018 - Leather Goods; Namely, Handbags, Wallets, Travel Bags, Luggage, Business Card Cases, Change Purses, Tote Bags, and Cosmetic Bags Sold Empty |

---

[1] The factual background is taken from Plaintiff's First Amended Complaint, the Motion, and supporting Declarations submitted by Plaintiff.

*See* Declaration of Javier Diaz ("Diaz Decl.") [ECF No. 29-1] at ¶¶ 4-5. The Chanel Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. *See id*.

Plaintiff's representative conducted a review of and visually inspected the detailed web page captures reflecting various products bearing Plaintiff's trademarks offered for sale through the Internet websites and supporting domains operating under the domain names ("Subject Domain Names") and the social media pages operating via Facebook.com ("Social Media Accounts") collectively identified on Schedule "A" and determined the products were non-genuine, unauthorized versions of Plaintiff's products, or used images of authentic products in order to facilitate the sale of non-genuine versions of Plaintiff's products. *See id*. at ¶¶ 10-11. Based on its investigation, Plaintiff alleges Defendant has advertised, promoted, offered for sale, or sold goods bearing what Plaintiff has determined to be counterfeits, infringements, reproductions, and/or colorable imitations of the Chanel Marks. *See id.* at ¶¶ 9-11; *see also* Compl. ¶¶ 26-34. Defendant is not now, nor has it ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Chanel Marks. *See* Diaz Decl. ¶¶ 9-11.

**B.     Procedural Background**

On December 23, 2019 Plaintiff filed its Complaint and on June 16, 2020 its First Amended Complaint against Defendant. On June 16, 2020, Plaintiff filed a Motion for Order Authorizing Alternate Service of Process [ECF No. 13] ("Motion for Alternate Service"). The Court entered an Order Granting the Motion for Alternate Service on June 22, 2020 [ECF No. 15]. In accordance with the June 22, 2020 Order, Plaintiff served Defendant with a Summons, and copies of the Complaint and First Amended Complaint via electronic mail and website posting on June 24, 2020. *See* Declaration of Stephen M. Gaffigan ("Gaffigan Decl.") [ECF No. 29-2] ¶ 4; *see also* Proof of

Service [ECF No. 20]. Plaintiff filed the Proof of Service as to Defendant on July 7, 2020. *See* Proof of Service.

Defendant failed to file an answer or other response, and the time allowed for Defendant to respond to the First Amended Complaint has since expired. *See* Gaffigan Decl. ¶¶ 5-6. To Plaintiff's knowledge, Defendant is not an infant or incompetent person, and the Servicemembers Civil Relief Act does not apply. *See id*. at ¶ 7. On July 30, 2020, in compliance with the Court's *sua sponte* Order [ECF No. 21], the Clerk entered Default against Defendant [ECF No. 22] for failure to appear, plead, or otherwise defend pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. Plaintiff now moves the Court for default final judgment against Defendant.

## **LEGAL STANDARD**

A party may apply to the court for a default judgment when the defendant fails to timely respond to a pleading. Fed. R. Civ. P. 55(b)(2). "A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (internal quotations omitted) (quoting *Nishimatsu. Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1205 (5th Cir. 1975)). However, conclusions of law are to be determined by the court. *Mierzwicki v. CAB Asset Management LLC*, No. 14-61998, 2014 WL 12488533, at *1 (S.D. Fla. Dec. 30, 2014) (citation omitted). Therefore, a court may only enter a default judgment if there is a "sufficient basis to state a claim." *Id.*

Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (citation omitted). Although an evidentiary hearing is generally required, the Court need not conduct such a hearing "when . . . additional evidence would be truly

unnecessary to a fully informed determination of damages." *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746 (11th Cir. 2017). Therefore, where the record adequately supports the award of damages, an evidentiary hearing is not required. *See SEC v. Smyth,* 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *see also PetMed Express*, 336 F. Supp. 2d at 1223 (finding an evidentiary hearing unnecessary because plaintiff was seeking statutory damages under the Lanham Act); *Luxottica Group S.p.A. v. Casa Los Martnez Corp.*, No. 14-22859, 2014 WL 4948632, at *2 (S.D. Fla. Oct. 2, 2014) (same).

## ANALYSIS

### A. Claims

Plaintiff seeks a default judgment for the relief sought in the First Amended Complaint, asserting the following claims against Defendants: (1) trademark counterfeiting and infringement under section 32 of the Lanham Act, in violation of 15 U.S.C. section 1114 ("Claim 1"); (2) false designation of origin under section 43(a) of the Lanham Act, in violation of 15 U.S.C. section 1125(a) ("Claim 2"); (3) unfair competition under Florida common law ("Claim 3"); and (4) trademark infringement under Florida common law ("Claim 4"). *See* Compl. ¶¶ 37-61.

#### 1. Counterfeiting and Infringement

Section 32 of the Lanham Act, 15 U.S.C. section 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a) (alterations added). To prevail on its trademark infringement claim, a plaintiff must demonstrate "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (footnote and citations omitted).

### 2. False Designation of Origin

The test for liability for false designation of origin under 15 U.S.C. section 1125(a) is the same as for a trademark counterfeiting and infringement claim—*i.e.*, whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780 (1992) (Stevens, J., concurring in the judgment).

### 3. Common Law Unfair Competition

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. *See Rolex Watch U.S.A., Inc. v. Forrester*, No. 83-8381, 1986 WL 15668, at *3-4 (S.D. Fla. Dec. 9, 1986) ("[I]t is clear that the Court need not find 'actual confusion' . . . . The proper test is 'likelihood of confusion.'").

### 4. Common Law Trademark Infringement

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under section 32(a) of the Lanham Act. *See PetMed Express,* 336 F. Supp. 2d 1217-18.

### B. Liability

The well-pleaded factual allegations of Plaintiff's First Amended Complaint properly contain the elements for each of the above claims and are admitted by virtue of Defendant's default. *See* Compl. ¶¶ 7-15, 16-24, 25-30, 37-43, 44-51, 52-56, 57-61. Moreover, the First Amended Complaint's factual allegations have been substantiated by sworn declarations and other evidence and establish Defendant's liability for each of the claims asserted. Accordingly, default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure is appropriately entered against Defendant.

### C.     Relief

Plaintiff requests entry of equitable relief and monetary damages against Defendant for trademark infringement in Claim 1.  The Court analyzes Plaintiff's request for relief as to Claim 1 only, as the judgment for Claims 2, 3, and 4—false designation of origin, common law unfair competition, and common law trademark infringement—is limited to entry of the requested equitable relief for Claim 1.  *See generally* Mot.

*Injunctive Relief.*  Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law.  15 U.S.C. § 1116(a).  Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."  *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (alteration in original) (internal quotation marks omitted) (quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Injunctive relief is available even in the default judgment setting, *see, e.g., PetMed Express,* 336 F. Supp. 2d at 1222-23, because Defendants' failure to respond or otherwise appear makes it difficult for a plaintiff to prevent further infringement absent an injunction.  *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease.  Therefore, plaintiff is entitled to permanent injunctive relief.") (alteration added).

Permanent injunctive relief is appropriate where a plaintiff demonstrates: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest.  *See eBay, Inc. v.*

*MercExchange, LLC.*, 547 U.S. 388, 391-92 (2006).  Plaintiff has carried its burden on each of the four factors.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . a substantial threat of irreparable harm."  *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985) (alterations added) (footnote omitted); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage [the plaintiff's] business reputation and decrease its legitimate sales.") (alteration added).  Plaintiff's First Amended Complaint and the submissions show, the goods produced and sold by Defendant are nearly identical to Plaintiff's genuine products, and consumers viewing Defendant's counterfeit goods post-sale would actually confuse them for Plaintiff's genuine products.  *See, e.g.*, Compl. ¶ 28 ("The net effect of Defendants' actions is likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale in Defendants' ecommerce stores are genuine goods originating from, associated with, and/or approved by Chanel.").

Plaintiff has no adequate remedy at law so long as Defendant continues to operate the Subject Domain Names and Social Media Accounts because Plaintiff cannot control the quality of what appears to be its products in the marketplace.  An award of money damages will not cure the injury to Plaintiff's reputation and goodwill if Defendant's infringing and counterfeiting continue.  Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace.  By contrast, Defendant faces no hardship if it is prohibited from the infringement of Plaintiff's trademarks.  Finally, the public interest supports the issuance of a permanent injunction against Defendant to prevent consumers from being misled by Defendant's products, and potentially

harmed by their inferior quality.  *See Chanel, Inc. v. besumart.com,* 240 F. Supp. 3d 1238, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.") (alteration added); *see also World Wrestling Entm't, Inc. v. Thomas*, No. 12-CIV-21018, 2012 WL 12874190, at *8 (S.D. Fla. Apr. 11, 2012) (considering the potential for harm based on exposure to potentially hazardous counterfeit merchandise in analyzing public's interest in an injunction).

Broad equity powers allow the Court to fashion injunctive relief necessary to stop Defendant's infringing activities.  *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould [sic] each decree to the necessities of the particular case." (alterations added; citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co*., 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole." (citations omitted)).  District courts are expressly authorized to order the transfer or surrender of domain names in an *in rem* action against a domain name.  *See* 15 U.S.C. §§ 1125(d)(1)(C), (d)(2).  However, courts have not limited the remedy to that context.  *See, e.g., Philip Morris USA, Inc. v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 230 n.2 (S.D.N.Y. 2004) (transferring Yesmoke.com domain name to plaintiff despite the fact the plaintiff did not own a trademark in the term "Yesmoke" and noting 15 U.S.C. section 1125 "neither states nor implies that an *in rem* action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (ordering the defendants to disclose all

other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. section 1116(a)).

Defendant has created an Internet-based counterfeiting scheme in which it is profiting from its deliberate misappropriation of Plaintiff's rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendant is conducting its unlawful activities. Ordering the cancellation or transfer of the Subject Domain Names to Plaintiff, assigning all rights, title, and interest to the Subject Domain Names to Plaintiff, permanently delisting or deindexing the Subject Domain Names from any Internet search engine, permanently terminating Defendant's Social Media Accounts, and suspending Defendant's e-mail addresses, such that these means may no longer be used as instrumentalities to further the sale of counterfeit goods, are appropriate remedies to achieve this end.

*Statutory Damages.* In a case involving the use of counterfeit marks in connection with the sale, offering for sale, or distribution of goods, 15 U.S.C. section 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. *See* 15 U.S.C. § 1117(c)(1). In addition, if the Court finds Defendant's counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per counterfeit mark per type of good. *See* 15 U.S.C. § 1117(c)(2). The Court has wide discretion to determine the amount of statutory damages. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citations omitted). An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement. *See Ford Motor Co.*, 441 F. Supp. 2d at 852 (citations omitted) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.") (alteration added); *Playboy Enters., Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV. A. 96-6961, 1998 WL 767440, at *8

(E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). The option of a statutory damages remedy in trademark counterfeiting cases is sensible given evidence of a defendant's profits in such cases is frequently almost impossible to ascertain. *See, e.g.,* S. Rep. No. 104-177, pt. V § 7, at 10 (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "[e]specially appropriate in default judgment cases due to infringer nondisclosure") (alteration added; citations omitted). This case is no exception.

Here, the allegations of the First Amended Complaint and the evidence establish the Defendant intentionally copied one or more of the Chanel Marks for the purpose of deriving the benefit of Plaintiff's world-famous reputation. Defendant has defaulted on Plaintiff's allegations of willfulness. *See* Compl. ¶ 32; *see also Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (citation omitted) (finding a court may infer willfulness from the defendants' default); *PetMed Express, Inc.*, 336 F. Supp. 2d at 1217 (stating that upon default, well pleaded allegations are taken as true). As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure Defendant does not continue its intentional and willful counterfeiting activities.

The only available evidence demonstrates that Defendant promoted, distributed, advertised, offered for sale, and/or sold at least one type of good bearing marks which were counterfeits of at least one of the Chanel Marks protected by federal trademark registrations. *See* Compl. ¶¶ 16, 25-33, 47-51; Diaz Decl. ¶¶ 4, 9-11. Based on the above considerations, Plaintiff has asked the Court to award statutory damages in the amount of $1,000,000.00 against Defendant. *See* Mot. 16. The award should be sufficient to deter Defendant and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish

Defendant, all stated goals of 15 U.S.C. section 1117(c). The Court finds that this award of statutory damages falls within the permissible range under 15 U.S.C. section 1117(c) and is just. *See Fendi, S.r.l. v. socjmkfn*, No. 18-63101 (S.D. Fla. 2019) [ECF No. 44] (awarding plaintiff $1,000,000.00 against each defendant); *Louis Vuitton Malletier, S.A. v. 98lvshop.com*, No. 18-62351 (S.D. Fla. 2019) [ECF No. 26] (awarding plaintiff $1,000,000.00 against each defendant); *Chanel, Inc. v. 2creplicachanel.com*, No. 19-60153 (S.D. Fla. 2019) [ECF Nos. 16 and 17] (awarding plaintiff $1,000,000.00 against each defendant); *Tiffany (NJ) LLC v. discountiffany.com*, No. 18-62831 (S.D. Fla. 2019) [ECF Nos. 29 and 30] (awarding plaintiff $1,000,000.00 against each defendant); *Chanel, Inc. v. icheapgrandtrade.ru*, No. 17-61179 (S.D. Fla. 2017) [ECF Nos. 25 and 26] (awarding plaintiff $2,000,000.00 against defendant); *Specialized Bicycle Components, Inc. v. bobjerseys.com*, No. 14-61806 (S.D. Fla. 2015) [ECF No. 50] (awarding plaintiff $2,000,000.00 against each defendant).

## CONCLUSION

For the foregoing reasons, Plaintiff is entitled to the entry of final default judgment. Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Entry of Final Default Judgment [**ECF No. 29**] is **GRANTED**. Default final judgment and a permanent injunction shall be entered by separate order.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 30th day of October, 2020.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

## SCHEDULE "A"
## DEFENDANT'S SUBJECT DOMAIN NAMES AND SOCIAL MEDIA ACCOUNTS

| Subject Domain Name | Facebook Account User Names |
|---|---|
| accentaluxury.com | |
| apexboutiques.com | Apex Boutiques<br>@apexboutiques<br>AP |
| billiontique.com | |
| cascadeboutique.com | Cascade Boutique |
| cascadeboutiques.com | Cascadeboutiques |
| coronaboutique.com | |
| fifiboutiques.com | |
| ggboutiqq.com | |
| lacolumba.com | |
| lavenueluxury.com | |
| locrater.com | Crater |
| mallorcaboutiques.com | |
| markleboutique.com | Markle Boutique |
| midnightboutique.store | Midnight-boutique<br>Midnight Boutique |
| nayzahboutiques.com | |
| parisboutiq.com | |
| pergolaboutique.com | |
| prestigeboutiqes.com | |
| rosellaboutique.com | |
| thefashionglaze.com | |
| theparisboutique.com | |
| venaboutique.com | |
| ViniBoutique.com | |
| vitobskyboutiques.com | Vitobsky Boutiques |
| vivoboutique.com | |
| allendedeluxe.com | Caviar Collection |
| venoraboutique.com a/k/a Verona Boutique | |
| | |